No. 25-40126

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

PRISCILLA TRYON CAMBRIC,

*Plaintiff - Appellant*

v.

CITY OF CORPUS CHRISTI,

*Defendant - Appellee*

## On Appeal from

United States District Court for the Southern District of Texas,

Corpus Christi Division

2:24-CV-00041

## BRIEF OF APPELLANT PRISCILLA TRYON CAMBRIC

SUBMITTED BY:

Matthew S. Manning
State Bar No. 24075847
matt@wcctxlaw.com
Webb, Cason & Manning, P.C.
710 N. Mesquite Street
Corpus Christi, TX 78401
T: (361) 887-1031
F: (361) 887-0903

Counsel for Plaintiff-Appellant
Priscilla Tryon Cambric

# **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellant: | Counsel for Appellant: |
|---|---|
| Priscilla Tryon Cambric | Matthew Manning of Webb, Cason & Manning, P.C., Corpus Christi, TX |

| Appellee: | Counsel for Appellants: |
|---|---|
| City of Corpus Christi, Texas | Lilia A. Castro City of Corpus Christi, Texas |

/s/Matthew S. Manning
Attorney of Record for Appellant
Priscilla Tryon Cambric

## STATEMENT REGARDING ORAL ARGUMENT

**Oral argument is requested.** This case involves a robust factual record and presents a legal issue that is novel in the instant application. The decision by this Court will affect not only the parties to this litigation, but may have a direct effect upon parties seeking the restoration of historically and culturally significant buildings.

This case raises constitutional issues that have been litigated often in the United States Supreme Court and the Fifth Circuit Court of Appeals, but not frequently in the factual context in which this appeal is presented. The opportunity to address these issues in greater detail to this Court, and to respond to inquiries from this Court, will aid the Court in its decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................. iii

STATEMENT REGARDING ORAL ARGUMENT ........................... iv

TABLE OF CONTENTS ................................................................ v

TABLE OF AUTHORITIES ............................................................ 1

JURISDICTIONAL STATEMENT .................................................. 3

STATEMENT OF ISSUES ............................................................. 4

STATEMENT OF THE CASE ........................................................ 5

BACKGROUND ............................................................................ 6

SUMMARY OF THE ARGUMENT ................................................. 9

ARGUMENT ................................................................................ 10

  STANDARD OF REVIEW ......................................................... 10

    I. The similarly situated comparator buildings referenced in
    Appellant's First Amended Complaint are in all respects
    identical to Appellant's building for the purpose of a
    selective enforcement analysis. The district court erred in
    determining otherwise, requiring more specificity in the
    buildings "similarly situated." .................................................. 11

    II. The Corpus Christi City Council is the final policymaker
    and decisionmaker under a Monell analysis; and thus, its
    decision not to permit Appellant to seek historical
    designation and a reasonable opportunity to renovate
    violates the Fourteenth Amendment, as plead. ....................... 21

CONCLUSION ............................................................................ 24

CERTIFICATE OF SERVICE ...................................................... 25

CERTIFICATE OF COMPLIANCE .............................................. 26

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Allred's Produce v. U.S. Dep't of Agric.*, <u>178 F.3d 743, 748</u> (5th Cir. 2000) ...................................................................................................13

*Armstrong v. Ashley*, <u>60 F.4th 262, 272</u> n. 10 (5th Cir. 2023) ...............10

*Beeler v. Rounsavall*, <u>328 F.3d 813, 816</u> (5th Cir. 2003) ........................11

*Beeler v. Rounsavall*, <u>328 F.3d 813, 817</u> (5th Cir. 2003) ........................13

*Bennett v. Slidell*, <u>728 F.2d 762, 767</u> (5th Cir. 1984)(citing *Adickes v. S.H. Kress & Co.*, <u>398 U.S. 144, 167-68</u> (1970)(...........................................21

*Bolton v. City of Dallas Tex.*, <u>541 F. 3d 545, 548</u> (2008).........................21

*Bolton*, at 550.....................................................................................21

*Brookwood Dev., L.L.C. v. City of Ridgeland*, <u>2024 U.S. App. LEXIS 29520, *15</u> (5th Cir. 2024)...................................................................13

*Butler v. Collins*, 2025 Tex. LEXIS 426, *4, at fn. 4 (Tex. 2025)............17

*Davis v. Tarrant County, Tex.*, <u>565 F.3d 214, 217</u> (5th Cir. 2009) .........10

*Frank v. Delta Airlines*, <u>314 F.3d 195, 197</u> (5th Cir. 2002) ...................10

*Frederick Douglass Foundation, Inc. v. Dist. of Columbia*, <u>82 F. 4th 1122</u>, 1147 (D.C. Cir. 2023) ......................................................................14

*Frederick Douglass Foundation, Inc.*, at 1137.......................................14

*Groden v. City of Dallas,* <u>826 F.3d 280, 286</u> (5th Cir. 2016)...................21

*Hines v. Quillivan*, <u>982 F.3d 266, 272</u> (5th Cir. 2020)............................11

*Jett v. Dallas Indep. Sch. Dist.*, <u>491 U.S. 701, 737</u> (1989).....................21

*Johnson v. Bowe*, <u>856 Fed. Appx. 487, 492</u> (5th Cir. 2021) ...................10

*Kilpatrick v. King*, <u>499 F. 3d 759, 768</u> (8th Cir. 2007) ...........................14

*Lacey v. Maricopa County*, <u>693 F.3d 896</u>,  (9th Cir. 2012) ....................13

*Lee v. Whispering Oaks Home Owners' Ass'n*, <u>797 F. Supp. 2d 740, 752</u> (W.D. Tex. June 23, 2011)................................................................12

*Lewis v. City of Union City, Ga.*, <u>918 F. 3d 1213, 1220</u> (11th Cir. 2019)<u>14</u>

*Lindquist v. City of Pasadena Tex.*, <u>669 F.3d 225, 233-34</u> (5th Cir. 2012) ...................................................................................................13

*Mahone v. Addicks Util. Dist. of Harris Cnty.,* <u>836 F.2d 921, 932</u> (5th Cir. 1988)................................................................................................11

*McCarthy v. City of Cordele, Ga.,* 111 F. 4th 1141, 1146 (11th Cir. 2024) ....................................................................................................14

*McMillan v. Monroe County*, 520 U.S. 781, 784-85 (1997) .....................21

*NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015).........10

*Nordlinger v. Hahn*, 505 U.S. 1, 21, 112 S. Ct. 2326, 2337 (1992) .........12

*Pembaur v. City of Cincinnati*, 106 S. Ct. 1292, 1298 (1986) .................22

*Reeves v. Columbus Consol. Gov't*, 2024 U.S. App. LEXIS 116, *2 (11th Cir. 2024) ....................................................................................14

*Rioux v. City of Atlanta*, 520 F. 3d 1269, 1274 (11th Cir. 2008)............14

*Smith v. City of Bastrop*, 2020 U.S. Dist. LEXIS 124957, *12 (W.D. Tex. July 15, 2020)...............................................................................12

*St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013) .............12

*Tex. Ent. Ass'n v. Hegar*, 10 F. 4th 495, 513 (5th Cir. 2021).....................13

*United States v. Armstrong*, 517 U.S. 456, 465 (1996) ...........................13

*Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ........................12

*Villarreal v. City of Laredo*, 94 F.4th 374, 384 (5th Cir. 2024) .............10

*Wayte v. United States*, 470 U.S. 598, 607 (1985)...................................14

*Wilson v. Northcutt*, 441 F. 3d 586, 590 (8th Cir. 2006) ........................14

*Woodard v. Andrus*, 419 F.3d, 352 (5th Cir. 2005)................................21

*Worsham v. Pasadena*, 881 F. 2d 1336, 1341 (5th Cir. 1989)................22

*Ziyadat v. Diamondrock Hosp. Co.*, 3 F. 4th 1291, 1296 (11th Cir. 2021) ....................................................................................................14

## Statutes

28 U.S.C § 1291................................................................................... 3

28 U.S.C § 1331................................................................................... 3

Corpus Christi, Tex., Code of Ordinances, §13-20 (2018)......................15

Texas Local Gov't Code Ann. §§25.029, 26.021 .....................................21

## **JURISDICTIONAL STATEMENT**

This honorable Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1291, as this is an appeal from the district court's grant of Appellee's motion to dismiss Appellant's *First Amended* Complaint. Appellant appealed from the United States District Court for the Southern District of Texas. ROA.1702.

# STATEMENT OF ISSUES

**Issue One:** The similarly situated comparator buildings referenced in Appellant's First Amended Complaint are in all respects identical to Appellant's building for the purpose of a selective enforcement analysis. The district court erred in determining otherwise, requiring more specificity in the buildings "similarly situated."

**Issue Two:** The Corpus Christi City Council is the final policymaker and decisionmaker under a *Monell* analysis; and thus, its decision not to permit Appellant to seek historical designation and a reasonable opportunity to renovate violates the Fourteenth Amendment, as plead.

## <u>STATEMENT OF THE CASE</u>

Appellant appealed the district court's *Order,* issued 13 February 2025, granting Appellee' motion to dismiss Appellant's *First Amended Complaint*. <u>ROA.1686</u>.

Appellant's *First Amended Complaint* alleges a selective enforcement claim and a claim under *Monell* against the City of Corpus Christi. <u>ROA.937-957</u>.

Her *First Amended Complaint* further alleges that the City of Corpus Christi, Texas has afforded other non-Black-owned buildings of historic import the opportunity to renovate and has not targeted such buildings for selective enforcement.

Appellee filed its motion to dismiss the *First Amended Complaint* on 2 September 2024, alleging Appellant had not sufficiently identified comparators for her selective enforcement claim or properly plead a *Monell* claim. <u>ROA.6</u>. The trial court improperly granted Appellee's motion to dismiss on 13 February 2025, issuing its final judgment on 13 March 2025. <u>ROA.1686</u>. This appeal followed. <u>ROA.1702</u>.

## **BACKGROUND**

Appellant filed her *Sworn Petition for Injunction and Application for Temporary Restraining Order* (solely against Defendant City of Corpus Christi) and *Plaintiff's Original Petition* (against all Defendants), both filed on 9 February 2024, in Cause No. 2024DCV-0539-E in the 148th District Court of Nueces County, Texas.[1]

Prior to that filing, Appellant appeared at two City Council meetings regarding her building the subject of this suit and the City's selective enforcement on 22 December 2023 and 9 January 2024. In the second meeting, the City of Corpus Christi City Council mandated that Appellant secure the building and erect fencing within 14 days, and provide a structural engineer's report within 60 days. Councilman Roy indicated that he desired for the City's authority to demolish the building to become immediately effective in the event of alleged non-compliance.[2]

Counsel for Mrs. Cambric essentially objected, noting that there were due process concerns with an immediate demolition upon alleged non-compliance.[3]

---

[1] ROA.789
[2] *Id.*
[3] *Id.*

During this second meeting, it was clear that the mandate for the fencing on the sidewalk in front of Appellant's property was due to concerns, as voiced by Councilmember Dan Suckley, about a large sign on the building falling and injuring passersby.[4]

In response to this, Mrs. Cambric secured the building and removed the sign, incurring costs in the process. On 23 January 2024, Counsel for Mrs. Cambric informed the City Council and the City of Corpus Christi Code Enforcement that she had substantially complied with the City's order, including taking the unrequested step to remove the sign from the building.[5]

On 25 January 2024, Counsel for Mrs. Cambric was notified, via email, that the City of Corpus Christi deemed her efforts insufficient and ordering her to remove or demolish the building within 30 days.[6]

On 9 February 2024, Appellant appealed the City of Corpus Christi's decision on the appeal within the 15-day timeframe permitted by the statute. The pertinent section of the City ordinance (hereinafter the "Ordinance") reads as follows: "The decision of the city council shall

---

[4] *Id.*
[5] *Id.*
[6] ROA.790.

be final unless the aggrieved party appeals by instituting suit for that purpose in any court having jurisdiction within fifteen (15) days from the date on which the decision of the city council was rendered."[7]

The Honorable David Klein, presiding judge of the 148th District Court of Nueces County, Texas, granted Appellant's temporary restraining order on 12 February 2024.[8]

Appellee removed the action from state to federal court on 15 February 2024.[9]

Thereafter, Counsel for Appellant and Appellee executed a Rule 11 agreement ensuring the building would not be demolished for at least 60 days.[10]

Appellee filed its motion to dismiss on 11 March 2024.[11] Appellant filed her response 8 April 2024.[12] Appellee filed its Reply on 15 April 2024.[13] The Court held its Initial Pre-Trial Conference on 6 June 2024, hearing arguments on the pending motions at that time.[14]

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] ROA.3.
[12] ROA.4.
[13] *Id.*
[14] ROA.5.

Appellant filed her *First Amended Petition* on 5 August 2024.[15] Appellee filed its motion to dismiss the *First Amended Petition* on 2 September 2024.[16] The district court issued its *Order* granting the motion to dismiss on 13 February 2025, issuing its final judgment the same day.[17]

Appellant filed her *Notice of Appeal* on 10 March 2025.[18]

## SUMMARY OF THE ARGUMENT

The similarly situated comparator buildings referenced in Appellant's First Amended Complaint are in all respects identical to Appellant's building for the purpose of a selective enforcement analysis. The district court erred in determining otherwise, requiring more specificity in the buildings "similarly situated."

The Corpus Christi City Council is the final policymaker and decisionmaker under a *Monell* analysis; and thus, its decision not to permit Appellant to seek historical designation and a reasonable opportunity to renovate violates the Fourteenth Amendment, as plead.

---

[15] *Id.*
[16] *Id.*
[17] <u>ROA.6</u>.
[18] *Id.*

# **ARGUMENT**

## STANDARD OF REVIEW

"This court reviews the district court's order granting a Rule 12(b)(6) motion de novo to determine whether the facts pled state plausible claims cognizable in law."[19] In such review, the Court uses "the same standard as the district court."[20]

This Court has held that "[w]hen ruling on a Rule 12 motion, a court may consider 'documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"[21] This Court has further held that "[d]ocuments can also be considered part of the pleadings if the court may take judicial notice of them."[22]

In the instant case, Appellant has appealed the granting of a Rule 12(b)(6) motion in the trial court. ROA.1702.

---

[19] *Villarreal v. City of Laredo*, 94 F.4th 374, 384 (5th Cir. 2024)(citing *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015)).
[20] *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 217 (5th Cir. 2009)(citing *Frank v. Delta Airlines*, 314 F.3d 195, 197 (5th Cir. 2002)).

[21] *Villarreal*, at 383, n. 2. (citing *Armstrong v. Ashley*, 60 F.4th 262, 272 n. 10 (5th Cir. 2023)).
[22] *Johnson v. Bowe*, 856 Fed. Appx. 487, 492 (5th Cir. 2021).

I. THE SIMILARLY SITUATED COMPARATOR BUILDINGS REFERENCED IN APPELLANT'S FIRST AMENDED COMPLAINT ARE IN ALL RESPECTS IDENTICAL TO APPELLANT'S BUILDING FOR THE PURPOSE OF A SELECTIVE ENFORCEMENT ANALYSIS. THE DISTRICT COURT ERRED IN DETERMINING OTHERWISE, REQUIRING MORE SPECIFICITY IN THE BUILDINGS "SIMILARLY SITUATED."

A. Equal Protection claims generally and Selective Enforcement or Prosecution claims specifically

A plaintiff must prove that similarly situated individuals were treated differently to state a claim for equal protection.[23] An action does not deny equal protection of the laws where the "challenged government action does not appear to classify or distinguish between two or more relevant persons or groups."[24] Where the classification does not "[warrant] some form of heightened review because it jeopardizes [the] exercise of a fundamental right or categorizes on the basis of an

---

[23] *Hines v. Quillivan*, <u>982 F.3d 266, 272</u> (5th Cir. 2020)(citing *Beeler v. Rounsavall*, <u>328 F.3d 813, 816</u> (5th Cir. 2003)).
[24] *Id.*, at 273 (citing *Mahone v. Addicks Util. Dist. of Harris Cnty.*, <u>836 F.2d 921, 932</u> (5th Cir. 1988)).

inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."[25]

Undergirding the Equal Protection Clause of the Fourteenth Amendment is "the principle that government action should not be arbitrary."[26] With respect to the rational basis review, "'rational'…must actually be rational, not a matter of fiction[27]; and while the government has no affirmative evidentiary burden on the government, a plaintiff may adduce evidence of irrationality to "negate a seemingly plausible basis for the law."[28] Courts are not required to accept "nonsensical explanations for regulation."[29] A rational basis determination is a question of law.[30]

To survive a motion to dismiss where the government action is subject only to rational basis, the Seventh Circuit has held that a Plaintiff

---

[25] *Id.* (citing *Nordlinger v. Hahn*, <u>505 U.S. 1, 21</u>, <u>112 S. Ct. 2326, 2337</u> (1992).

[26] *Id.* (citing *Vill. Of Willowbrook v. Olech*, <u>528 U.S. 562, 564</u> (2000)).

[27] *Id.* (citing *St. Joseph Abbey v. Castille*, <u>712 F.3d 215, 223</u> (5th Cir. 2013)).

[28] *Id.*

[29] *Id.* (discussed in the context of state economic regulation and the "great deference" due such regulation).

[30] *Smith v. City of Bastrop*, <u>2020 U.S. Dist. LEXIS 124957, *12</u> (W.D. Tex. July 15, 2020).

must "plead facts that overcome the presumption of rationality afforded to the City's action."[31]

Successful selective enforcement or prosecution claims require a plaintiff to "prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."[32] Plaintiffs can furthermore show that the selective enforcement was based on an "arbitrary classification."[33] Class-of-one plaintiffs' claims' requirement that a comparator be "similarly situated" is not subject to "rigid, mechanical application—there is no precise formula to determine whether an individual is similarly situated to comparators…[it depends] on the facts and context of the case…[and is] case-specific."[34] The plaintiff and comparator must be similar in all relevant respects.[35]

The Ninth Circuit notes that plaintiffs in such cases can "allege some facts, anecdotal or statistical…" to show that similarly situated

---

[31] *Lee v. Whispering Oaks Home Owners' Ass'n*, 797 F. Supp. 2d 740, 752 (W.D. Tex. June 23, 2011).

[32] *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003)).

[33] *Id.* (citing *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 2000)).

[34] *Brookwood Dev., L.L.C. v. City of Ridgeland*, 2024 U.S. App. LEXIS 29520, *15 (5th Cir. 2024)(citing *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233-34 (5th Cir. 2012))(not designated for publication).

[35] *Id.* (citing *Tex. Ent. Ass'n v. Hegar*, 10 F. 4th 495, 513 (5th Cir. 2021)(quotation omitted)).

defendants were not prosecuted but could have been.[36] Moreover, with respect to the racial or discriminatory animus element, courts have found that certain facts can "create a reasonable inference of unconstitutional motive"[37] and that plaintiffs can "demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination."[38] The D.C. Circuit found that some of the appropriately considered factors when evaluating similarly situated comparators in the context of selective prosecution are "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan."[39]

---

[36] *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012)(citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

[37] *Kilpatrick v. King*, 499 F. 3d 759, 768 (8th Cir. 2007)(citing *Wilson v. Northcutt*, 441 F. 3d 586, 590 (8th Cir. 2006)); *see also McCarthy v. City of Cordele, Ga.*, 111 F. 4th 1141, 1146 (11th Cir. 2024)(permitting the "reasonable inference the commissioners who voted to fire him did so because of his race."); *Frederick Douglass Foundation, Inc. v. Dist. of Columbia*, 82 F. 4th 1122, 1147 (D.C. Cir. 2023)(recognizing the potential for an "inference of invidious discrimination").

[38] *Reeves v. Columbus Consol. Gov't*, 2024 U.S. App. LEXIS 116, *2 (11th Cir. 2024)(not designated for publication)(citing *Lewis v. City of Union City, Ga.*, 918 F. 3d 1213, 1220 (11th Cir. 2019)(en banc)); *see also Ziyadat v. Diamondrock Hosp. Co.*, 3 F. 4th 1291, 1296 (11th Cir. 2021) (citing *Rioux v. City of Atlanta*, 520 F. 3d 1269, 1274 (11th Cir. 2008)).

[39] *Frederick Douglass Foundation, Inc.*, at 1137 (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)).

B. The district court required a level of proof not required at the 12(b)6 stage; and Appellant's pleadings more than adequately showed the other buildings were appropriate comparators; there is no rational basis for the City's action; and there is a reasonable inference of an unconstitutional motive.

The district court noted in its *Order* granting the motion to dismiss that "Plaintiff's pleading is based on nothing more than a curbside view of the properties and does not address their individual structural safety, their particular danger to the community, their prospects for repair, or the efforts asked of, and/or provided by, their respective owners."[40] Appellant included in her pleading sixteen (16) examples of other buildings in obvious disrepair in the City of Corpus Christi.[41] The buildings shown in Appellant's *First Amended Complaint* are all obviously substandard, albeit in different respects.[42] The City of Corpus Christi code section applicable to substandard buildings, §13-20 (b)(21)1-12, lists twelve different "conditions or defects," specifically noting that

---

[40] ROA. 1695.
[41] ROA.797; *see also* ROA.939-47.
[42] *Id.*

the list is non-exhaustive.[43] Some of the listed conditions are as nebulous as "the building or structure, or any portion thereof, is clearly unsafe for its use and occupancy,"[44] necessarily catching in its net allegedly substandard buildings with virtually any defect rendering them uninhabitable or useful. With respect to the roof of Appellant's structure — the primary complaint of the City of Corpus Christi with respect to the building — Appellant included the photographs of four comparators in her *First Amended Complaint*.[45]

So too are the Hoover Hotel, the Ritz Theater, and the homes in Heritage Park perfectly fitting comparators to Appellant's building.[46] Each of these structures is decades-old; and, at various times, the City of Corpus Christi has afforded opportunities for these buildings to seek renovations and grant monies, or literally moved them to an area for preservation.[47] Appellant plead, in paragraphs 86-88 of her *First Amended Complaint* specifically that the City of Corpus Christi Code Enforcement had not cited or sought enforcement against the Ritz

---

[43] Corpus Christi, Tex., Code of Ordinances, §13-20 (2018).
[44] *Id.*
[45] ROA.795, fn. 30.
[46] ROA.947-59; ROA.958-59.
[47] *See* ROA.949-56, 986, 992, 1002-03 (the Ritz's "Raise the Roof" campaign to fix the roof), 1004, and ROA.294.

Theater in the manner it has her building, despite the City receiving letters from the Texas Historical Commission encouraging the City to allow her the opportunity to preserve the structure.[48] While not a true preemption issue, the Texas Historical Commission is the top agency in the state for historical designation, and thus its recognition that the building is eligible for recognition on the register of great importance.[49] Appellant specifically plead that she had not been afforded the adequate time to undergo the preservation and historical landmark process, "despite having comparable cultural significance [as the Ritz Theater] to the city and state."[50]

Moreover, in the appendix to her *First Amended Complaint*, Appellant included documentation as far back as 1981 evidencing the Ritz Theatre seeking historical designation.[51] As far back as thirty-seven (37) years ago, the Texas Historical Commission noted that "the windows and entryway of the Ritz…[needed] fixin'[52]; notwithstanding this, the

---

[48] ROA.959.
[49] *See Butler v. Collins*, 2025 Tex. LEXIS 426, *4, at fn. 4 (Tex. 2025)(noting that state preemption of local law is grounded in the Texas Constitution's express prohibitions against city ordinances inconsistent with state law statutes).
[50] *Id.*
[51] ROA.963 (such designation sought twelve (12) years after the theatre's closing.)
[52] ROA.979, 981.

Ritz Theater was permitted to undergo the historical designation process, applying for funds to fix its roof as recently as May 2019.[53] There can be no doubt that Appellant's pleading concerning her building — approximately eighty-five (85) years old and with letters of support for its renovation, just like the Ritz Theatre — identifies several fitting, similarly situated comparators.

Consequently, there is no rational basis for the City's targeted enforcement actions on this historical building but dearth of action on the others identified as comparators in Appellant's *First Amended Complaint*. The City of Corpus Christi and two of its code enforcement personnel (previous defendants granted qualified immunity, the granting of which is not being appealed) argued in their respective replies to their motions to dismiss that Appellant did not provide enough information regarding her building for comparison and that she did not show there was not a rational basis for the City's action.[54] The City provided no rational basis for its application on Appellant's structure despite it being in relatively the same condition under the code of ordinances as the near-two-dozen comparators she provided. She did indeed plead at least four

---

[53] ROA.1013, 1016-41.
[54] *See generally*, ROA.902-15.

other buildings with a "similar roof failure."[55] This is especially true in light of a former City Councilmember's comments at one of the hearings before the City Council that it had "reinvigorated code enforcement," thus empowering the Code Enforcement to take action against substandard buildings.[56]

Appellant plead sufficient information to draw the reasonable inference that there was an improper motive to the City's targeted enforcement on her building, as required under a selective enforcement claim. This is evidenced by Exhibit C to her original filing, a letter from Earthjustice to the U.S. Department of Housing and Urban Development, including the proposed demolition of her building along with the City of Corpus Christi's actions with respect to the Inner Harbor Desalination Plant.[57] Noting that this is the "historically Black Hillcrest neighborhood," Earthjustice wrote that such actions by the City of Corpus Christi "discriminate[d] against the residents of Hillcrest and the Northside neighborhoods" — where the subject building is located — "and violate[d] Title VI of the Civil Rights Act and the Fair Housing Act."[58]

---

[55] *See* Appellee's *Motion to Dismiss*; ROA.459.
[56] ROA.297.
[57] ROA.879-80.
[58] *Id.*

Appellant specifically plead that the selective enforcement on her property "belies an effort to continue razing the community in which the property lies,"[59] and that she is included in the predominant race of those in the community (e.g. Black). This pleads enough to draw the inference that race — of both Appellant and the community wherein her building sits — is an improper consideration for the basis of the City of Corpus Christi's targeted enforcement actions.

Accordingly, Appellant sufficiently plead her class-of-one selective enforcement claim, establishing sufficient comparators, a lack of rational basis, and sufficiently plead allegations for the reasonable inference that race is a motivating factor in the targeted enforcement. The ruling of the district court should reversed with respect to this claim.

---

[59] ROA.956.

II. The Corpus Christi City Council is the final policymaker and decisionmaker under a *Monell* analysis; and thus, its decision not to permit Appellant to seek historical designation and a reasonable opportunity to renovate violates the Fourteenth Amendment, as plead.

A single unconstitutional action by a municipal actor may give rise to municipal liability if the actor is a "final policymaker."[60] The Supreme Court has recognized that a governmental body can speak with final policymaking authority concerning the action "alleged to have caused the particular constitutional or statutory violation at issue."[61] Custom or usage may have the force of law.[62] Under Texas law, the final policymaker for the City — dependent on the form of government and the classification of the type of city (e.g. home rule) — is the City Council.[63]

---

[60] *Bolton v. City of Dallas Tex.*, 541 F. 3d 545, 548 (2008)(citing *Woodard v. Andrus*, 419 F.3d, 352 (5th Cir. 2005)).
[61] *Id.* (citing *McMillan v. Monroe County*, 520 U.S. 781, 784-85 (1997)).
[62] *Id.*, at fn. 2. (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).
[63] *Groden v. City of Dallas,* 826 F.3d 280, 286 (5th Cir. 2016)(citing *Bolton*, at 550); *see also* Texas Local Gov't Code Ann. §§25.029, 26.021.

A plaintiff must thus show, in the context of a city council, that the body promulgated or ratified an unconstitutional policy.[64]

In describing custom or usage, the Supreme Court has used phrases like "persistent and widespread…permanent and well-settled…and deeply embedded traditional ways of carrying out…policy."[65] Actual knowledge of the policy may be shown by such means as discussions at council meetings.[66] Municipal liability can be maintained where the municipality is "actually responsible."[67]

Appellant plead three specific policies: selective enforcement of allegedly substandard properties; selective allowance of certain historic properties to have adequate time to seek historic preservation status, while not affording others the same reasonable time to seek such status; and selective application of criteria for demolition.[68] As the record reflects, in prior appearances before the City Council decision to demolish Appellant's property, at least two (former) City Council members noted

---

[64] *Id.*, at 286.
[65] *Bennett v. Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)(finding evidence of a claim under §1983 for a deprivation of rights where there was a state-enforced custom of segregation in public eating places).
[66] *Id.*, at 768.
[67] *Worsham v. Pasadena*, 881 F. 2d 1336, 1341 (5th Cir. 1989)(citing *Pembaur v. City of Cincinnati*, 106 S. Ct. 1292, 1298 (1986)).
[68] ROA.957.

that the City Council was treating Appellant's building differently than it had the Hoover Hotel and the Ritz Theatre.[69] With respect to the Hoover Hotel, the former councilman noted that the owner had spent upwards of $400,000 attempting to renovate the building.[70] The City Council moreover noted that the City itself had sought grant money to preserve historic buildings.[71] The City Council further mentioned that optically bad buildings were being targeted, with Code Enforcement "encouraged" to go around the City and clean up some of the abandoned buildings.[72]

The City Councilmembers' recognition that the Hoover Hotel, the Ritz Theatre, and other buildings being given an opportunity to renovate substantiates Appellant's claim, pursuant to *Monell*, that she is being treated differently than similarly situated comparators, in violation of the Fourteenth Amendment.[73] Because the City is the final policymaker, this individual deprivation of Appellant's rights creates municipal liability in light of the City Council's own recognition that it has treated

---

[69] ROA.294, 310, 322, 323, and 338.
[70] ROA.310.
[71] ROA.322.
[72] ROA.347, 351.
[73] ROA.957.

other buildings – and thus, owners – differently who are similarly situated with respect to historical preservation and cultural significance. Appellant plead this expansively with respect to the Ritz Theatre in particular.

Accordingly, the district court erred in ruling that Appellant did not plead a constitutional violation pursuant to *Monell*. The district court ruling should thus be respectfully reversed.

## <u>CONCLUSION</u>

This Court should REVERSE the district court's grant of Appellee's motion to dismiss by the district court and remand this case to the district court for further proceedings consistent with such order.

SUBMITTED BY:
/s/Matthew S. Manning
State Bar No. 24075847
matt@wcctxlaw.com
Webb, Cason & Manning, P.C.
710 N. Mesquite Street
Corpus Christi, TX 78401
T: (361) 887-1031
F: (361) 887-0903
Counsel for Appellant Priscilla Tryon
Cambric

## **CERTIFICATE OF SERVICE**

I certify that on 14 July 2025, the foregoing document has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on all registered counsel of record, and has been transmitted to the Clerk of the Court.


/s/ Matthew S. Manning
**Matthew S. Manning**

## **CERTIFICATE OF COMPLIANCE**

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 3,575 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac (2019) in a 14-point font named Century Schoolbook.

/s/Matthew S. Manning